854 P.2d 797 (1993)
E.O., Petitioner,
v.
The PEOPLE of the State of Colorado, EL PASO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent,
In the Interest of: C.O.A., Child.
No. 92SC200.
Supreme Court of Colorado, En Banc.
June 21, 1993.
Rehearing Denied July 6, 1993.
*798 Thomas A. Barnes, Jr., Colorado Springs, for petitioner.
Beth A. Whittier, El Paso County Atty., Laura C. Rhyne, Deputy County Atty., Colorado Springs, for respondent.
JoAnn Ranta, Colorado Springs, Guardian Ad Litem.
Justice VOLLACK delivered the Opinion of the Court.
E.O. petitions from the court of appeals dismissal of her appeal. The district court (sitting as the juvenile court) adjudicated E.O.'s daughter as a dependent and neglected child, and subsequently approved an amended treatment plan with a goal of placing the child in the physical custody of her stepfather. E.O. filed a notice of appeal, and the court of appeals issued an order to show cause. The court of appeals subsequently dismissed E.O.'s appeal without prejudice for lack of an appealable order. We affirm.

I.
The Department of Social Services filed a dependency and neglect petition concerning C.O.A. (the child) on April 20, 1989. C.O.A. was adjudicated a dependent and neglected child on May 2, 1989.
On May 16, 1989, the juvenile court held a hearing and approved a treatment plan addressing the placement of the child. In that hearing, the juvenile court ordered that the legal custody of the child be vested in the El Paso County Department of Social Services for a determinate period of one year, subject to being vacated or extended by further order of the juvenile court. The juvenile court also ordered that physical custody of the child be vested in E.O. (the mother).
As a result of periodic court reviews and motion hearings, the child was first placed in the physical custody of her mother and then in foster care. The Social Services caseworker filed with the court a proposed amended treatment plan on July 9, 1991. The caseworker, in the summary of the case, expressed concern as to the length of time the child had been in foster care. The plan recommended reuniting the child with the stepfather through transition counseling, therapy, and supervision. The plan provided for further therapy for the mother and visitation with the child. The plan was conditioned upon successful completion of the requirements under the transition plan before physical custody would be given to the stepfather. Legal custody would remain in the Department of Social Services until further order of the court. The plan also provided for a written review in three months.
On August 12, 1991, the juvenile court conducted a contested hearing regarding a proposed amended treatment plan. In a September 13, 1991, order, the juvenile court noted that "[t]he only significant contested element of the [amended] treatment plan proposed by the El Paso County Department of Social Services was a recommendation for ultimate physical placement of the child with the [stepfather]." The juvenile court adopted the El Paso County Department of Social Services' amended treatment plan providing a transition plan with a goal of placing physical custody of the child in her stepfather.[1] The juvenile court reasoned:

*799 The record does clearly establish that [the mother] has been unable, over the entire course of this case, to follow the orders of the court or to provide any consistent living environment for the child.... It is improbable that she could comply with the orders of the court should the child be place[d] with her or to cooperate in facilitating visitation between the child and [the stepfather].
Because all experts agree that the child should be returned to either [the stepfather] or [the mother] as quickly as possible with strong stipulations for supervision and treatment; and because it is improbable that [the mother] could comply with those orders, the court adopts the treatment plan proposed by Susan Miller and Nancy Lanning, dated June 28, 1991.
Because the concerns of the experts with regard to sexual abuse of the child have not been dispelled, the court orders the G.A.L. and the supervising caseworker to maintain close contact with the child during the transitional period and to provide written informal monthly reports on her progress.
THEREFORE, the court finds that out of the home placement of the child was an emergency and adopts as its order the amended treatment plan dated June 28, 1991.
The mother filed a notice of appeal, and the court of appeals ordered the mother to show cause why the appeal should not be dismissed for lack of a final appealable order. The mother responded to the court of appeals' order to show cause, and the court of appeals dismissed the appeal on February 13, 1992. The mother then filed a petition for rehearing, which the court of appeals denied on February 28, 1992.
We granted certiorari to determine "whether the approval of a treatment plan by the [juvenile] court, which addresses the placement of a minor child following an adjudication of dependency and neglect, constitutes a disposition which renders the adjudication final for purposes of appeal."
E.O. contends that People in Interest of B.M., 738 P.2d 45 (Colo.App.1987), is dispositive in the present action, and that
the court of appeals erred in disregarding the specific holding of People in the Interest of B.M. that "the approval of a treatment plan which addresses the placement of a minor child following adjudication of dependency and neglect constitutes a disposition ... and renders the adjudication final for purposes of appeal."
(Citation omitted.) E.O. further argues that, as a matter of public policy, issuance of a court order approving a treatment plan should render the adjudication final for purposes of appeal because her ability to appeal the approval of a treatment plan is otherwise effectively denied.
In issuing its order to show cause, the court of appeals stated that "the September 13, 1991, order approving and adopting an amended treatment plan does not appear to be a final order. See People in the I[n]terest of P.L.B., 743 P.2d 980 (Colo.App.1987)."

II.

A.
In determining whether the action of the juvenile court is final, leaving nothing *800 further to be considered by the court, we must first consider the nature of the proceedings under the Children's Code and those cases interpreting the Code. The Code provides for a bifurcated proceeding in a dependency and neglect action. In the first phase, the court determines if there are grounds to adjudicate the child dependent and neglected.[2] If the court sustains the petition, the second, or dispositional, phase commences with the hearing and adoption of a treatment plan. The treatment plan is designed to correct the problems which led the court to adjudicate the child dependent and neglected. The goal of the treatment plan is to reunite the family and discharge the governmental intervention into the family's affairs, so long as the best interests of the child have been served.
In addressing the question of when a final disposition constitutes an appealable judgment, we held in D.H. v. People, 192 Colo. 542, 561 P.2d 5 (1977), that an
appeal to [the court of appeals] lies only from the final judgment of a district, superior, probate or juvenile court. Stillings v. Davis, 158 Colo. 308[, 310], 406 P.2d 337[, 338 (1965)], defines the term "final judgment":
"... A final judgment is defined as one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding."
Id. at 543-44, 561 P.2d at 6 (citation omitted).
Based upon our ruling in D.H., we held in People in Interest of E.A., 638 P.2d 278, 282 (Colo.1981), that "[a]n appeal lies from any final judgment entered by a juvenile court." We then explained that
[t]he Children's Code permits the court to bifurcate the adjudicatory and dispositional hearings and to continue the dispositional hearing to some future date. The adjudication of a child as dependent or neglected, with the dispositional hearing continued to a future date, does not become a final judgment until a decree of disposition is entered. The time for filing a motion for a new trial or for a modification of judgment does not commence to run until the entry of a final order, judgment or decree.
Id. at 282 (citations omitted); see People in Interest of K.L., 681 P.2d 535, 536 (Colo.App.1984).
The court of appeals discussed the court's continuing obligation to review the progress of a child's treatment plan, and to modify the child's out-of-home placement in accordance with the changing circumstances of the parties in People in Interest of P.L.B., 743 P.2d 980 (Colo.App.1987). In that case, after an adjudication of dependency and neglect, legal custody of the child was awarded to the Jefferson County Department of Social Services, and physical custody of the child was awarded to the child's maternal grandparents. Pursuant to a subsequent motion by the child's father, the juvenile court awarded physical custody of the child to the child's maternal aunt. When the maternal aunt sought court permission to move the child out of state, the father filed a second motion for *801 change of placement. The court denied this motion. The court issued a protective custody order, and placed the child in the physical custody of the department of social services. The father filed a third motion for change of placement; after a hearing on this motion, the court awarded physical custody of the child to the child's paternal aunt and uncle. The juvenile court affirmed this placement order, and the child's maternal aunt and mother appealed the issuance of the protective custody order and the subsequent modification of the child's out-of-home placement.
The court of appeals in In re P.L.B. held:
An order for temporary protective custody concerns the physical custody of a child and does not affect the parties' right to legal custody of the child....
At all times pertinent here, legal custody of the child was vested in the department. The orders concerning legal custody and physical placement of the child were subject to periodic review, and the department, as legal custodian, had the right, subject to the approval by the court, to determine where and with whom the child would live.
Because a change in a child's placement, whether pursuant to § 19-10-107, C.R.S. (1986 Repl.Vol. 8B), to the court's periodic review, or to a motion of a party, does not affect legal custody of the child, modification of an order for out-of-home placement is interlocutory and not appealable.
Id. at 981-82 (citations omitted).

B.
In the present action, the juvenile court adjudicated the child as dependent and neglected, and approved an amended treatment plan with a goal of placing physical custody in the child's stepfather. The transitional requirement of the treatment plan is interlocutory and could be changed after periodic review by the court or by motion of one of the parties. See In re P.L.B., 743 P.2d at 981-82. Therefore, the juvenile court's approval of an amended treatment plan with a goal of placing physical custody in the stepfather does not constitute a final appealable order "`which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" D.H., 192 Colo. at 544, 561 P.2d at 6 (quoting Stillings v. Davis, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965)); see In re E.A., 638 P.2d at 282; In re P.L.B., 743 P.2d at 981-82.
We agree with the conclusion of the court of appeals in the present action that In re P.L.B. applies in this case. Conversely, we disagree with E.O.'s contention that People in Interest of B.M., 738 P.2d 45 (Colo.App.1987), is controlling in this case. We disapprove of the court of appeals holding in In re B.M.[3] to the extent that it conflicts with our holding in this case.
Accordingly, we affirm the court of appeals dismissal without prejudice for lack of a final appealable order.
NOTES
[1] The amended treatment plan provides in part:

TREATMENT PLAN
1. Problem
[C.O.A.] has been in placement since 1/9/90.
Goal
To reunite [C.O.A.] with [stepfather].
Plan
1. [C.O.A.] and [stepfather] will participate in transitional therapy, once weekly with an approved therapist.
a. Any missed appointments will be made up within seven days.
b. The duration of this therapy should be at least four months yet this could be increased or decreased at the discretion of the therapist, the GAL, and the caseworker.
2. There will be supervised visits, unsupervised visits, overnight visits, weekend visits, and finally extended overnight visits prior to [C.O.A.'s] return home. The progression will occur with the advise [sic] of the therapist and at the discretion of the Guardian ad Litem and the caseworker.
3. The FAST Team will continue to work with [stepfather] and [C.O.A.] once weekly.
a. All missed appointments will be made up within seven days.
b. Day-to-day parenting skills will be addressed.
c. [Stepfather] will be able to identify age appropriate behavior.
d. [Stepfather] will be able to provide for [C.O.A.'s] nutritional, educational and medical needs.
e. [Stepfather] will understand and demonstrate appropriate boundaries with [C.O.A.].
4. [Stepfather] and [C.O.A.] will attend and complete the Nurturing Program prior to her return home.
a. Attendance will be 90% with a legitimate excuse for all absences.
b. [Stepfather] will be able to provide a nurturing environment to [C.O.A.].
c. [Stepfather] will be able to demonstrate the ability to set limits and discipline of [C.O.A.].
[2] Section 19-3-102, 8B C.R.S. (1989 Supp.), sets forth the grounds for determining if a child is neglected or dependent as follows:

Neglected or dependent child. (1) A child is neglected or dependent if:
(a) A parent, guardian, or legal custodian has abandoned the child or has subjected him to mistreatment or abuse or a parent, guardian, or legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring;
(b) The child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;
(c) The child's environment is injurious to his welfare;
(d) A parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his health, guidance, or well-being;
(e) The child is homeless, without proper care, or not domiciled with his parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian;
(f) The child has run away from home or is otherwise beyond the control of his parent, guardian, or legal custodian.
§ 19-3-102(1)(a)-(f), 8B C.R.S. (1989 Supp.).
[3] In People in Interest of B.M., 738 P.2d 45 (Colo.App.1987), the court of appeals held that "[t]he approval of a treatment plan which addresses the placement of a minor child following an adjudication of dependency and neglect constitutes a disposition ... and renders the adjudication final for purposes of appeal." Id. at 46 (citation omitted).